**FILED**

**NOV 17 2006**

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOVAN MOSLEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) 06CV6314 |
| | ) JUDGE COAR |
| CITY OF CHICAGO, CLARENCE HILL, | ) MAGISTRATE JUDGE COLE |
| MAVERICK PORTER, DERAIL EASTER, | ) |
| CHARLES WILLIAMS, EDWARD | ) |
| HOWARD, JR., | ) |
| Officers of the Chicago Police | ) |
| Department, | ) |
| | ) |
| Defendants. | |

## COMPLAINT

Plaintiff Jovan Mosley, by his attorneys, Sean Mulroney and Edward W. McNabola of Defendants The City of Chicago, Clarence Hill, Maverick Porter, Derail Easter, Charles Williams, and Edward Howard, Jr. (collectively "Defendants") as follows:

### INTRODUCTION

1. This is a civil rights action pursuant to 42 U.S.C. § 1983 to redress the Defendants' violations of rights secured to the plaintiff Jovan Mosley ("Plaintiff") by the United States Constitution. Plaintiff was wrongly charged with the homicide of Howard Thomas and spent over five years incarcerated while awaiting trial on these false charges. Plaintiff was ultimately acquitted in November, 2005.

2. Plaintiff's arrest and incarceration were caused by the illegal and unconstitutional conduct of the Defendants, who coerced a confession from Plaintiff, lied

to the grand jury, and otherwise fabricated evidence against Plaintiff. Plaintiff was factually innocent of the charges. He would not have been arrested, indicted, or incarcerated had it not been for the Defendants' unconstitutional conduct.

3. This Complaint seeks relief against Defendants for the following conduct: (i) coercing Plaintiff to confess to a crime he did not commit by means of threats, sleep deprivation, prolonged physical discomfort in many forms, and deception; (ii) destroying general progress reports regarding Plaintiff's post-arrest detention to hide the fact that he was physically and mentally abused by the Defendants; (iii) lying to the grand jury by claiming that witnesses had identified Plaintiff as a participant to the crime when he had not been so identified; and (iv) fabricating a line-up report to suggest that Plaintiff was identified as a participant in the crime when, in fact, that witness specifically stated that Plaintiff did not participate in the crime.

## PARTIES

4. Plaintiff Jovan Mosley, at all times relevant, lived at 8348 South Kingston Avenue in the City of Chicago, County of Cook.

5. Defendant Clarence Hill, at all times relevant, was a detective with the Area 2 Violent Crimes Unit in the City of Chicago Police Department. His star number was 21092.

6. Defendant Maverick Porter was at all times relevant a detective with the Area 2 Violent Crimes Unit of the City of Chicago Police Department. His star number was 20265.

2

7. Defendant Derail Easter, at all times relevant, was a detective with the Area 2 Violent Crimes Unit in the City of Chicago Police Department. His star number was 20017.

8. Defendant Edward "Charles" Howard, Jr., at all times relevant, was a detective with the Area 2 Violent Crimes Unit in the City of Chicago Police Department. His star number was 2337.

9. Defendant Charles Williams was a sergeant with Area 2 Violent Crimes in the City of Chicago Police Department. His star number was 21042. At all times relevant hereto, Defendant Williams was a duly appointed Chicago Police Sergeant assigned to Area 2 and as such was the direct supervisor of the above described Defendant detectives described above.

10. All of the Defendants, with the exception of the City of Chicago are sued in their individual capacities, and all acted under color of law and in the scope of their employment.

## FACTUAL BACKGROUND

### *The Murder of Howard Thomas and Initial Investigation*

11. Howard Thomas was murdered on August 6, 1999, between midnight and 1:00 a.m., near the address of 7330 South Calumet Avenue in the City of Chicago, County of Cook. Mr. Thomas was beaten to death by three individuals using a small baseball bat and their hands and feet. These individuals further robbed Mr. Thomas of his money and a soft-drink beverage he had been carrying in a grocery bag.

12. The individuals who robbed and murdered Mr. Thomas were Farad Muhammad, Lawrence Wideman, and Marvin Treadwell.

3

13. Plaintiff Jovan Mosley did not participate in the attack on Mr. Thomas in any way whatsoever. Plaintiff Mosley was present in the vicinity of the altercation between Mr. Thomas and the three individuals but did not participate in any way and, in fact, left the scene during the altercation and did not know of the outcome.

14. Witnesses to the homicide included Jori Garth, Anton Williams, Gregory Reed, and Derek and Ronald Barnes.

15. Jori Garth told the police that, while five to six individuals had been present at or around the scene of the murder, only three people had participated in the murder. Ms. Garth indicated that two people kicked and punched the victim and a third person used a small baseball bat. She stated that Farad Muhammad had used the baseball bat and that Marvin Treadwell was one of the two individuals who had punched and kicked the victim.

16. Ms. Garth never mentioned or identified Plaintiff Mosley in any way in regard to the murder.

17. Anton Williams told the police that three individuals had beaten the victim. He stated that Farad Muhammad had used the baseball bat and that Marvin Treadwell and Lawrence Wideman had punched and kicked the victim.

18. Anton Williams never told the police that Plaintiff Mosley had participated in any way in the murder. He would later identify Plaintiff Mosley in a line-up, but only as an individual who had been present at or around the scene of the murder. Williams specifically stated that Plaintiff Mosley had not been a participant in any way.

19. Derek Barnes told the police that he had witnessed three individuals attack and murder the victim. He stated that one individual had used a baseball bat and that two others had kicked and punched the victim.

20. Derek Barnes did not implicate Plaintiff Mosley in the murder in any way.

21. Ronald Barnes told the police that three individuals had participated in the beating and murder. He stated that one individual had used an object of some kind and the others had kicked and beaten the victim.

22. Ronald Barnes did not implicate Plaintiff Mosley in the murder in any way.

### *The Arrests of the Three Assailants*

23. On February 17, 2000, Farad Muhammad was arrested by Area 2 police.

24. On February 17, 2000, Jori Garth identified Farad Muhammad in a line-up as the man who had wielded a baseball bat during the attack on the victim.

25. On February 19, 2000, Lawrence Wideman was arrested by Area 2 police.

26. On February 20, 2000, Farad Muhammad gave a statement to an assistant state's attorney in which he confessed to the murder of Howard Thomas. Muhammad admitted to removing a souvenir-sized baseball bat from his jacket sleeve and using it to strike the victim.

27. Farad Muhammad stated that Plaintiff Mosley had been present at or around the scene but did not implicate Plaintiff Mosley as a participant in the attack in any way.

28. On February 20, 2000, Lawrence Wideman gave a statement to an assistant state's attorney in which he confessed to the murder of Howard Thomas. Wideman testified that Farad Muhammad had used a small baseball bat to beat the victim, and that

Wideman had also used the bat to strike the victim. He stated that Farad Muhammad, Marvin Treadwell and he had punched, kicked and struck the victim.

29. Lawrence Wideman did not implicate Plaintiff Mosley in the murder in any way.

30. On February 20, 2000, Farad Muhammad and Lawrence Wideman were charged with first-degree murder in the death of Howard Thomas.

31. Gregory Reed was brought in for questioning on February 18, 2000 by Area 2 police. Mr. Reed gave a written statement to police. In that statement, Reed identified Wideman, Treadwell, and Muhammad as individuals who attacked the victim. In addition, Reed stated that another man named "Jason" had punched the victim two or three times.

32. On information and belief, police did not deem Reed's testimony credible in part because he had been intoxicated when providing this statement.

33. On March 5, 2000, Marvin Treadwell was arrested by Area 2 police.

34. On March 5, 2000, witnesses Anton Williams and Jori Garth identified Treadwell as one of the assailants.

35. On March 5, 2000, Marvin Treadwell gave a statement to police. In this statement, Treadwell identified Lawrence Wideman, Farad Muhammad, Gregory Reed and himself as individuals who attacked the victim.

36. Mr. Treadwell did not identify Plaintiff Mosley as an assailant in the murder.

### *The Interrogation and Arrest of Plaintiff Mosley*

37. Plaintiff Mosley was picked up by Area 2 police on March 6, 2000 near the hour of 4:00 pm. He would later be chained to a wall in an interrogation room for over

6

twenty-four (24) hours, without food or drink, without sleep, without a phone call, without a bathroom break, and without *Miranda* warnings. During this ordeal, Plaintiff Mosley repeatedly and emphatically denied participating in the attack on Howard Thomas. At the end of this lengthy ordeal, and only after a promise that he would be released if he would simply admit to throwing a punch or two at Howard Thomas, Plaintiff Mosley falsely confessed to hitting Howard Thomas two times "in the left side."

38. After being brought to Area 2 headquarters, Plaintiff Mosley was placed in an interview room and handcuffed to a metal ring attached to the wall. Plaintiff Mosley's physical position, sitting on a flat-bed seat and raising his arm behind and above him as he was handcuffed to the metal ring, caused Plaintiff Mosley physical discomfort.

39. Plaintiff Mosley was first questioned by Defendants Howard and Easter. Plaintiff Mosley denied any involvement in the murder of Howard Thomas. These defendants periodically questioned Plaintiff Mosley again throughout that first evening. Plaintiff Mosley continually and consistently denied playing any role in the murder of Howard Thomas.

40. Between the hours of 11:00 pm and midnight that evening, Plaintiff Mosley was placed in a witness line-up. Anton Williams identified Plaintiff Mosley in that line-up only as someone who had been present at or around the scene of the crime, specifically indicating to police detectives that Plaintiff Mosley had not participated in the attack on the victim.

41. Plaintiff Mosley was then returned to that interview room and again handcuffed to the metal ring on the wall.

7

42. Throughout the day of March 6, 2000 in Area 2 headquarters, from the time he was detained throughout the day of March 7, 2000 and into the evening, Plaintiff Mosley:

>  (a) never signed a written authorization waiving his *Miranda* rights, even though Area 2 headquarters maintains a standard written authorization form for *Miranda* waivers;
>
>  (b) never was advised of his *Miranda* warnings even though Area 2 headquarters maintains a standard written authorization form for *Miranda* waivers;
>
>  (c) never was released from the physically uncomfortable position of sitting on a flat, hard surface with his arm handcuffed behind and above him (except when he was taken for the line-up);
>
>  (d) never was provided food;
>
>  (e) never was provided drink;
>
>  (f) never slept or was given any reasonable opportunity to sleep;
>
>  (g) never was provided a phone call;
>
>  (h) never was provided a bathroom break.

43. Defendants Howard and Easter continued to question Plaintiff Mosley on March 7, 2000, speaking with Plaintiff Mosley approximately four or five times. During the later of these interviews, Defendants Howard and Easter falsely claimed to possess a number of statements implicating Plaintiff Mosley in the murders. During each interrogation, Plaintiff Mosley denied having any involvement in the murder of Howard Thomas.

44. In the late afternoon or early evening of March 7, 2000, Defendants Porter and Hill began to interrogate Plaintiff Mosley. By this time, approximately twenty-four (24) hours had passed since Plaintiff Mosley's initial confinement, during which time he had

not slept or been given any reasonable opportunity to do so, and during which time he had not had anything to eat or drink, nor had he made a phone call, nor had he been advised of his *Miranda* rights.

45. With Defendants Porter and Hill, Plaintiff Mosley continued to deny any participation in the murder of Howard Thomas.

46. After several hours of interrogation, Defendants Porter and Hill advised Plaintiff Mosley that, if he admitted that he had only punched Howard Thomas once or twice, he would be released and could go home.

47. Plaintiff Mosley repeated, once again, that he had not hit Howard Thomas or participated in any way in the murder.

48. Defendants Porter and Hill assured Plaintiff Mosley that one or two punches is not murder and that if he admitted to the one or two punches, he would be free to leave.

49. Approximately thirty (30) hours after he was initially detained, having not eaten or drunk anything, having not slept or made a phone call, and having not been provided *Miranda* warnings, Plaintiff Mosley agreed to make a written statement.

50. Plaintiff Mosley's statement truthfully recited the events leading up to the murder in very specific detail but falsely stated that, during the altercation that led to Howard Thomas's death, Plaintiff Mosley had struck Mr. Thomas "two times in the left side."

51. Plaintiff Mosley was not released after making this statement, but rather was charged with first-degree murder.

52. At the time he was wrongfully arrested and charge with the murder of Mr. Thomas, Plaintiff Mosley was a 19-year-old young man, *without any criminal record,* or

9

any other involvement with the criminal justice system. He lived at home with his mother, or grandmother.

### *Plaintiff Mosley's Indictment and Pre-Trial Proceedings*

53. Defendant Hill testified before the grand jury investigating the murder of Howard Thomas. Defendant Hill testified in extremely vague terms that each of the four men arrested—Lawrence Wideman, Marvin Treadwell, Farad Muhammad, and Plaintiff Mosley—had participated in the beating and murder of Howard Thomas. Defendant Hill testified that his testimony was "based upon witness accounts and the statements by the defendants."

54. This testimony was false as it pertained to Plaintiff Mosley.

55. Anton Williams testified before the grand jury that he had witnessed Lawrence Wideman, Marvin Treadwell, and Farad Muhammad beat and murder Howard Thomas but that the fourth individual (Plaintiff Mosley) had not participated.

56. Plaintiff Mosley was indicted for the murder of Howard Thomas.

57. At his arraignment, Plaintiff Mosley's bond was set at $1.5 million. Because Plaintiff Mosley's family could not afford such bond, Plaintiff Mosley remained in county lock-up pending trial.

58. This high bond, resulting in Plaintiff Mosley's incarceration pending trial, was based on the strength of the evidence against him—the coerced confession and the grand jury testimony—all of which was false and unconstitutionally obtained.

59. Plaintiff Mosley moved to suppress his confession prior to trial. At the suppression hearing, the Defendants falsely testified that they advised Plaintiff Mosley of

10

his *Miranda* rights and that they provided him food and drink prior to making his written statement. The court denied the motion to suppress.

60. Plaintiff Mosley spent five years and ten months in county lock-up awaiting trial.

61. Prior to trial, defense counsel sought *Brady* discovery from the prosecution. Expected to be included in that *Brady* material were "General Progress Reports" prepared by Area 2 detectives during the course of their interrogation of Plaintiff Mosley.

62. It is standard practice for Area 2 detectives to prepare such reports, chronicling the status of the interrogation and including such items as the provision of food and bathroom breaks.

63. Defendants, however, seeking to cover up their abusive treatment of Plaintiff Mosley, conspired to remove and destroy these General Progress Reports. No General Progress Reports regarding Plaintiff Mosley's interrogation were ever turned over to the defense.

64. In addition, Defendants conspired to remove and destroy the line-up report in which Anton Williams identified Plaintiff Mosley only as having been present at, but specifically not a participant in, the attack on Howard Thomas. Defendants wrote up a new line-up report, suggesting that Anton Williams had implicated Plaintiff Mosley, which was turned over to the prosecution.

65. In October, 2004, two of Plaintiff Mosley's co-defendants, Lawrence Wideman and Marvin Treadwell, were convicted of first-degree murder.

### *Plaintiff Mosley's Acquittal at Trial*

11

66. Plaintiff Mosley was tried with the other co-defendant, Farad Muhammad, in November, 2005.

67. Aside from the written statement that Plaintiff Mosley had signed, there was no evidence whatsoever implicating Plaintiff Mosley in the murder of Howard Thomas. The prosecution did not call any of the Defendants to testify against Plaintiff Mosley. The prosecution did not call Gregory Reed, the only person who had even remotely implicated Plaintiff Mosley, although Mr. Reed was available as a witness. On information and belief, the prosecution did not call Gregory Reed because Mr. Reed had been impaired and intoxicated at the time he gave the statement that mentioned Plaintiff Mosley as one of the assailants.

68. Plaintiff Mosley was acquitted at trial.

69. In remaining behind bars for almost six years, Plaintiff Mosley was wrongfully deprived of his youth and his adolescence. Additionally, the emotional pain and suffering caused by losing almost six years in the prime of life has been substantial. During his wrongful incarceration, Plaintiff Mosley was stripped of the various pleasures of basic human experience, from the simplest to the most important, which all free people enjoy as a matter of right.

## COUNT I

### Due Process

70. Each of the paragraphs of this Complaint is incorporated as if fully restated herein.

71. As described fully above, all of the defendants, while acting individually,

12

employment, caused Plaintiff Mosley to be falsely imprisoned in violation of his constitutional rights.

78. As a result of this violation, Plaintiff Mosley suffered injuries, including but not limited to, emotional distress as is more fully alleged above.

79. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights.

## COUNT III

### Equal Protection

80. Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

81. As described fully above, all of the defendants, while acting individually, jointly and in conspiracy, as well as under of law and within the scope of their employment, denied Plaintiff Mosley equal protection of the law in violation of his constitutional rights.

82. Specifically, these Defendants actively participated in, or personally caused, misconduct in terms of failing to advise the Plaintiff of his *Miranda* rights, keeping him in a physically uncomfortable position for over 30 hours without food or drink, without an opportunity to sleep, without a phone call and without the ability to use the bathroom.

83. As a result of this violation, the Plaintiff suffered injuries, including but not limited to emotional distress, as is more fully alleged above.

jointly and in conspiracy, as well as under of law and within the scope of their employment, deprived Plaintiff Mosley of his right to a fair trial.

72. In the manner described more fully above, the Defendants deliberately withheld exculpatory evidence, as well as fabricated false reports and other evidence, thereby misleading and misdirecting the criminal prosecution of the Plaintiff. Absent this misconduct, the incarceration and prosecution of the Plaintiff could not and would not have been pursued.

73. The Defendants' misconduct also directly resulted in the unjust criminal prosecution of the Plaintiff, thereby denying him his constitutional right to a fair trial in violation of the Due Process clause of the Fourteenth Amendment to the United States Constitution.

74. As a result of this violation of his constitutional right to a fair trial, Plaintiff suffered injuries, including but not limited to, emotional distress, as is more fully alleged above.

75. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to the Plaintiff's constitutional rights.

## COUNT II

### False Imprisonment

76. Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

77. As described fully above, all of the defendants, while acting individually, jointly and in conspiracy, as well as under of law and within the scope of their

84. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally and with willful indifference to Plaintiff's constitutional rights.

### COUNT IV

### Conspiracy to Deprive Constitutional Rights

85. Each of the Paragraphs of this Complaint are incorporated as if fully restated herein.

86. As described fully above, all of the defendants conspired directly or indirectly, for the purpose of depriving the Plaintiff equal protection under the law.

87. In so doing, the Defendants took actions in furtherance of this conspiracy causing injury to the Plaintiff.

88. This misconduct, described in this Count was undertaken with malice, willfulness and reckless indifference for the rights of others.

### COUNT V

### Malicious Prosecution

89. Each of the Paragraphs of this Complaint are incorporated as if fully restated herein.

90. The Defendants caused the Plaintiff to be improperly subjected to judicial proceedings for which there was no probable cause. These judicial proceedings were instituted and continued maliciously, resulting in injury, and all such proceedings were terminated in Plaintiff's favor in a manner indicative of innocence.

91. The Defendant Officers identified above accused the Plaintiff of criminal activity, knowing those accusations to be without probable cause and they made statements to prosecutors with the intent of exerting influence to institute and continue the judicial proceedings.

92. Statements of the Defendant Officers regarding Plaintiff's alleged culpability were made with the knowledge that said statements were false, perjured or forcibly obtained. In doing so, the Defendants fabricated evidence and withheld exculpatory information.

93. The misconduct described in this Count was undertaken with malice, willfulness and reckless indifference for the rights of others.

94. As a result of this misconduct, the Plaintiff sustained and continues to sustain, injuries, including pain and suffering.

## COUNT VI

### Civil Conspiracy

95. Each of the Paragraphs of this Complaint is incorporated as if restated herein.

96. As described more fully in the preceding Paragraphs, the Defendants, acting in concert with one another, conspired to accomplish an unlawful purpose by unlawful means.

97. In furtherance of the conspiracy, Defendants committed over acts and were otherwise willful participants in joint activity.

98. The misconduct described in this Count was undertaken with malice, willfulness and reckless indifference for the rights of others.

99. As a proximate result of the Defendants' conspiracy, the plaintiff suffered damages, including severe emotional distress and anguish as is more fully alleged above.

## COUNT VII

### Intentional Infliction of Emotional Distress

100. Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

101. The acts of the Defendants set forth above were extreme and outrageous. The Defendants intended to cause, or were in reckless disregard of the probability that their conduct would cause severe emotional distress to the Plaintiff as more fully alleged above.

102. Said actions and conduct did directly and proximately cause severe emotional distress and thereby constituted intentional inflection of emotional distress.

103. The misconduct described in this Count was undertaken with malice, willfulness and reckless indifference for the rights of others.

104. As a proximate result of the misconduct of the Defendants, the Plaintiff suffered damages, including severe emotional distress and anguish, as is more fully alleged above.

## COUNT VIII

### Respondeat Superior

105. Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

106. In committing the acts alleged in the preceding paragraphs, each of the Defendant Officers were members of, and agents of, the Chicago Police Department and were acting within the scope of their employment.

107. Defendant City of Chicago is liable as principal for all torts committed by its agents.

## COUNT IX

### Indemnification

108. Each of the Paragraphs of this Complaint is incorporated as if fully restated herein.

109. Illinois law provides that public entities are directed to pay any compensatory damages for which employees are liable within the scope of their employment.

110. The Defendant Officers are or were employees of the Chicago Police Department, who acted within the scope of their employment in committing the misconduct described herein.

WHEREFORE, Mr. Mosley prays that this Honorable Court enter judgment in his favor and against the Defendants and award the following relief:

A. Compensatory damages in an amount to be determined at trial, but at least $15,000,000.00;

B.   Attorneys fees pursuant to 42 U.S.C. §1988;

C.   Such further and additional relief as this Honorable Court shall deem equitable.

Respectfully submitted,

JOVAN MOSLEY

By: _____

One of his attorneys

**PLAINTIFF DEMANDS**

**TRIAL BY JURY**