# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JOVAN MOSLEY, | ) |
| | ) |
| Plaintiff, | ) Case No. 06 C 6314 |
| | ) |
| | ) Judge David H. Coar |
| | ) |
| | ) Magistrate Judge Jeffrey Cole |
| CITY OF CHICAGO, CLARENCE | ) |
| HILL, MAVERICK PORTER, DERAIL | ) |
| EASTER, CHARLES WILLIAMS, | ) |
| EDWARD HOWARD, JR., Officers | ) |
| of the Chicago Police Department, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

### BACKGROUND

On August 11, 2008, I denied in part the City's Motion to Compel Chicago Magazine and Katherine Millett, a freelance journalist, who had written an article in 2006 in Chicago Magazine about the plaintiff's experiences in the Cook County Jail while he was awaiting trial on murder charges, to produce tapes or notes of interviews conducted by Ms. Millett of the prosecutors and defense lawyers in the murder case. However, I granted in part the City's motion to compel the production of tapes and notes of Ms. Millett's interviews of Mr. Mosley, himself. *Mosley v. City of Chicago*, _F.Supp.2d_, 2008 WL 3411664 (N.D.Ill. 2008). Chicago Magazine and Ms. Millett have filed a Motion for Reconsideration.

For a variety of psychological reasons and sound institutional considerations, there is a natural tendency for judges to view motions for reconsideration with a measure of skepticism. In another context, Judge Posner has recently noted what he has described as "confirmation bias – the

well-documented tendency, once one has made up one's mind, to search harder for evidence that confirms rather than contradicts one's initial judgment." Richard A. Posner, How Judges Think, 111 (2008). Hence, the hoary maxim that motions for reconsideration are viewed unfavorably. *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir.1990); *Quaker Alloy Casting Co. v. Gulfco Industries, Inc.*, 123 F.R.D. 282, 288 (N.D.Ill.1988)(Shadur, J.).[1]

But, judges are not omniscient, and even the most gifted make mistakes. *See, e.g., Willy v. Coastal Corp.*, 503 U.S. 131, 139 (1992); *Marek v. Chesny*, 473 U.S. 1 (1985)(Rehnquist, J., concurring); *Tome v. United States*, 513 U.S. 150, 167 (1995)(Scalia, J., concurring in part and concurring in the judgment). The Seventh Circuit has said that "in any given opinion, [a court] can misapprehend the facts ... or even overlook important facts or controlling law." *Olympia Equipments v. Western Union*, 802 F.2d 217, 219 (7th Cir.1986). Thus, motions for reconsideration can serve a valuable function by helping, under appropriate circumstances, to ensure judicial accuracy.

The Respondents' Motion for Reconsideration does not exactly contend that the Memorandum Opinion of August 11, 2008 misapprehended the facts or overlooked important facts or controlling law. Rather, it simply repeats certain of the arguments that were made in its Response Memorandum and cites the same cases cited in the Memorandum. But just as a reply brief is not a repeat brief, *Hussein v. Oshkosh Motor Truck Co.*, 816 F.2d 348, 360 (7th Cir. 1987), a motion for reconsideration is not a proper vehicle to reprise arguments that were rejected, *Patel v. Gonzales*, 442 F.3d 1011, 1016 (7th Cir. 2006), or to raise new arguments that could and should have been

---

[1] Justice Stevens, in a recent bar association speech, has equated a dissenting judge addressing bar associations with petitions for rehearing. Each, he said, serves the same therapeutic purpose: "as a substitute for more aggressive forms of civil disobedience, [they are] a futile but nonviolent form of protest that seldom does any harm."

advanced in the original briefing. *See United States v. Boyle*, 484 F.3d 943, 946 (7th Cir. 2007); *United States v. Alhalabi*, 443 F.3d 605, 611 (7th Cir. 2006); *Autotech Technologies Ltd. Partnership v. Automationdirect.com, Inc.*, 235 F.R.D. 435, 437 (N.D.Ill. 2006).

In one regard, however, the Motion for Reconsideration clarifies some uncertainty left by the initial briefing. The Memorandum Opinion and Order concluded that Ms. Millett's statement in her affidavit that she did not "have" any audio tapes of her interviews with Mr. Mosley – especially when coupled with the lack of any response on that score from Chicago Magazine – was not sufficient to conclude that no tapes were or had been in existence. *Mosley*, _F.Supp.2d_, 2008 WL 3411664 at *4.[2] The Motion for Reconsideration attaches an affidavit from Ms. Millett stating that she did not tape any of her conversations with Mr. Mosley and that the choice of the words in her initial affidavit, while "inartful[ ]," was not intended in any way to be misleading. (Motion for Reconsideration at 2-3; *Id.*, Ex. D). I fully credit Ms. Millett's representations and nothing in the August 11th Memorandum Opinion and Order was intended or should be read to suggest anything negative about Ms. Millett, Chicago Magazine, or the nature of the original briefing.

---

[2] The Memorandum Opinion and Order noted :

> Moreover, as a "freelance journalist for over eight years, and as a graduate of the University of Chicago Law School and a practicing lawyer for ten years (Millett affidavit., ¶¶ 1-2), it may reasonably be assumed that Ms. Millett's choice of the word "have" was purposeful, and one ought not read more into her carefully drafted statement than normal usage requires. It is significant that she does not say that the tapes do not exist or that they are not in the possession of Chicago Magazine (or someone else) or that she could not, if she chose, secure possession of them. She merely states that *she* presently does not "have" them. But all that is required is that she have the ability to produce them. If in fact the audio tapes do not exist, it would have been simplicity itself for the Respondents to have said so in a way that did not leave the matter to conjecture. The Respondents may file within 14 days separate, supplemental affidavits making clear whether the tapes exist, and if they do not, explaining the circumstances surrounding their loss or destruction.

Also attached to the motion is the affidavit of Chicago Magazine stating that it has no audio or video recordings of Mr. Mosley (Motion for Reconsideration, Ex. D). The City does not contest these assertions regarding audio or video tapes and thus, there is no basis to require the Respondents to produce audio or video tapes that do not exist. To that extent, the Motion for Reconsideration is granted and the order requiring production of audio and video tapes is vacated.

The Motion for Reconsideration also attaches a second supplemental affidavit of Ms. Millett in which she states that she has one small notebook (approximately 3" x 4") reflecting conversations with Mr. Mosley. "None of these notes [she says] relate to Mr. Mosley's arrest, interrogation, or prosecution for murder. And none of these notes reflect to expand upon quotes of Mr. Mosley that were published in the article." (Motion for Reconsideration, Ex. E at 1, ¶3). Ms. Millett has stated that she has no objection to my examining the notes *in camera* to confirm her assertions. *Id.* The Motion for Reconsideration asks that I review the notes *in camera* (rather than ordering the notes to be turned over to defendants) and agrees that if the notes contain any information relating to Mr. Mosley's arrest, questioning, or other treatment by or encounters with the police, they may be turned over to the defense. The defense has agreed to this procedure.

Accordingly, the notes shall be provided to the court under seal for *in camera* review. If the notes do not contain relevant information they will not be turned over to the defense but will be maintained under seal in the court file. If the notes contain any relevant information, it will be provided to the defense. The Motion for Reconsideration is thus further granted to the extent that the Respondents need not provide Ms. Millett's notes to the defendants. However, the granting of this Motion should not be construed as in any way reversing the conclusion in the August 11th Memorandum Opinion and Order that under the circumstances of this case it was a proper exercise

4

of discretion to order the notes to be produced to the defense. *In camera* review may be a sufficient but not a necessary precondition to the discretionary decision to order production of a journalist's notes.

The Motion for Reconsideration also advances an argument not raised in the Response Memorandum, which takes issue with the finding that the Respondents waived any claim of privilege by their noncompliance with the requirement of Rule 45 that a non-party raising a claim of privilege must provide an appropriate privilege log. *Mosley*, _F.Supp.2d_, 2008 WL 3411664 at *3-4. Paragraph 15 of the Motion states:

> Finally, Respondents note that their objection to producing a traditional privilege log was based on Rule 45's protection of non-parties from "undue burden." The breadth of Defendants' subpoenas -- particularly the original subpoenas before being substantially narrowed in the Motion -- would have essentially required an itemization of the entire contents of Respondents' files for this article in order to produce a customary privilege log. As this Court recognized, "a journalist's notes or tapes (or other manifestations of journalistic endeavors) should not be 'available on request.' And they are not." (Ex. A, p. 25, internal citations omitted.) This Court too found that a great portion of even the more narrowly tailored requests pursued in Defendants' Motion was not justified and denied Defendants' requests for the tapes and notes in Millet's possession relating to the numerous lawyers and prosecutors mentioned in the article. Having to go through the burdensome exercise of itemizing and logging the contents of a journalist's file and every entry of notes for every person interviewed in order to gain protection under Rule 45 would undermine -- and indeed defeat in some cases -- that protection. Respondents respectfully submit that was and is the case here. Thus, while Respondents respectfully disagree with the Court's finding that their failure to produce a customary privilege log waived any reporter's privilege asserted, notwithstanding that finding, the lack of a privilege log does not and should not waive any of Respondents' objections under Rule 45 as to undue burden, which is the subject of the instant Motion for Reconsideration regarding the notes at issue.[3]

The Respondents are correct in contending that the right to contest the reasonableness of a

---

[3] No case is cited in support of paragraph 15 of the Motion for Reconsideration.

5

subpoena is not dependent on the submission of a privilege log. However, the argument – the Respondents have called it an explanation and thus have expressly declined to ask that I reconsider the finding of waiver of privilege[4] – advanced to justify their failure to have provided a privilege log constitutes an unsupported and unsupportable revision of Rule 45. The Federal Rules of Civil Procedure, which have the force of statutes, *Zapata Hermanos Sucesores, S.A. v. Hearthside Baking Co., Inc.*, 313 F.3d 385, 392 (7th Cir.2002), *cert. denied,* 540 U.S. 1068 (2003), are to be accorded "their plain meaning ... and generally with them, as with a statute, '[w]hen we find the terms ... unambiguous, judicial inquiry is complete....' " *Pavelic & LeFlore v. Marvel Entertainment Group,* 493 U.S. 120, 123, (1989). The construction advanced by the Motion for Reconsideration is contrary to the plain language of Rule 45.

Rule 45(d)(2)(A)'s requirement of a privilege log is mandatory: a claim of privilege *"shall* be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim." (Emphasis supplied). The Respondents' construction of the Rule transforms what is a textually unconditional requirement into a conditional one, subject to a determination of "undue burden" by the non-party, even though: (1) the concept of "undue burden" only comes into play in determining whether to require production of non-privileged information; and (2) nothing in Rule 45 authorizes a non-party to determine whether a subpoena subjects it to undue burden. Only a court on proper application can do that. *See*

---

[4] During the hearing on the Motion for Reconsideration, in response to my question, counsel for the Respondents expressly stated that they were not asking for reconsideration of the waiver finding and that ¶15 was merely to explain why a privilege log had not been prepared.

Rule 45(c)(3)(A)(iv). [5]

It is one thing to interpret statutory language "narrowly" or "broadly." It is quite another thing to rewrite a statute to include language Congress chose to exclude. *Veprinsky v. Fluor Daniel, Inc.*, 87 F.3d 881, 897 (7th Cir. 1996). Courts are not at liberty to rewrite statutes and rules that plainly and unambiguously prescribe duties, obligations and procedures. *See Ali v. Federal Bureau of Prisons*, 128 S.Ct. 831, 841 (2008); *Florida Dept. of Revenue v. Piccadilly Cafeterias, Inc.*, 128 S.Ct. 2326, 2339 (2008). Justice Frankfurter said it best:

> "[T]he courts are not at large.... They are under the constraints imposed by the judicial function in our democratic society. As a matter of verbal recognition certainly, no one will gainsay that the function in construing a statute is to ascertain the meaning of words used by the legislature. To go beyond it is to usurp a power which our democracy has lodged in its elected legislature.... A judge must not rewrite a statute, neither to enlarge nor to contract it. Whatever temptations the statesmanship of policy-making might wisely suggest, construction must eschew interpolation and evisceration. He must not read in by way of creation. He must not read out except to avoid patent nonsense or internal contradiction... [T]he only sure safeguard against crossing the line between adjudication and legislation is an alert recognition of the necessity not to cross it and instinctive, as well as trained, reluctance to do so."

Frankfurter, *Some Reflections on the Reading of Statutes*, 47 Colum.L.Rev. 527, 533, 535 (1947). *Accord Jones v. Bock*, 549 U.S. 199, 127 S. Ct. 910, 921 (2007).

DATE: 9/8/08            ENTERED: _____
                                 UNITED STATES MAGISTRATE JUDGE

---

[5] The same is true under Rule 26, as it applies to subpoenas to parties. As with parties under Rule 26, non-parties under Rule 45 have a choice: they can either prepare a privilege log or waive any claim of privilege. They cannot, however, avoid the obligation to prepare a privilege log by unilaterally deciding that it would be too difficult to prepare the log.